IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERBERT SPELLMAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OFFICER BRAD MOMME and | : | |
| OFFICER DAVID O'CONNOR | : | NO. 14-3365 |

MEMORANDUM

Dalzell, J.                                                                                                              May 5, 2015

On March 18, 2015, the seven-person jury[1] in this civil rights case delivered an inconsistent verdict, finding that neither police officer had seized, searched or detained Herbert Spellman or used unreasonable force against him but nonetheless awarding the plaintiff $20,000 in punitive damages. After polling the jury as to those negative answers, we granted the defendants' motion to enter judgment in their favor and against the plaintiff.

Spellman now moves for a new trial on two grounds. He asserts that we erred in failing to seek clarification from the jury as to its inconsistent verdict or to provide them with further instruction. He also contends that we erred in failing to instruct the jury that no frisk should be conducted unless a reasonable officer believed the plaintiff was armed and dangerous.

For the reasons detailed below, we find that we should have sought further clarification from the jury before entering the verdict and so we do not consider Spellman's other ground for seeking a new trial because we see no alternative to ordering a new trial.

I.      **Legal Standard**

We may grant a new jury trial pursuant to Fed. R. Civ. P. 59(a) on any issue for which a new trial has been granted in an action at law in federal court. Our Court of Appeals has

---

[1] One juror was absent and we proceeded in conformity with Fed. R. Civ. P. 48(b).

explained that a district court may grant a new trial "where a miscarriage of justice would result if the verdict were to stand." Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 572 (3d Cir. 2002) (internal citation omitted). In practical terms, courts have interpreted such circumstances to arise, inter alia, when there is a significant error of law to the prejudice of the moving party or the verdict is against the weight of the evidence. See, e.g., Maylie v. Nat'l R.R. Passenger Corp., 791 F. Supp. 477, 480 (E.D.Pa. 1992) (Pollak, J.)

"The authority to grant a new trial. . . is confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980). It is well-established that an order granting a new trial is interlocutory and not an appealable final order within the meaning of 28 U.S.C. § 1291. See Stradley v. Cortez, 518 F.2d 488, 491 (3d Cir. 1975) and Blancha v. Raymark Indus., 972 F.2d 507, 511-12 (3d Cir. 1992). An order granting a new trial becomes reviewable only following the entry of a final order at the conclusion of the ensuing retrial. If it then appears that the district court erred in granting a new trial, the order granting a new trial is reversed and the original verdict reinstated. Blancha, 972 F.2d at 512.

## II. The Contradictory Verdict

### A. The Jury Verdict

The parties submitted proposed jury interrogatories before the trial started on March 16, 2015. The charge conference was held on March 17, 2015 after both sides rested. At the charge conference, the parties considered and suggested changes to a simplified jury questionnaire that asked a single four-part question as to each officer.

The first two parts of each question read as follows:

  A) Do you find that Officer [] seized, searched and detained

>   Herbert Spellman in violation of the Fourth Amendment causing harm to Mr. Spellman?
> B) Do you find that Officer [] used unreasonable force against Herbert Spellman in violation of the Fourth Amendment causing harm to Mr. Spellman?

The questionnaire provided that if the jurors answered "NO" to questions A and B as to both officers, then the panel should go to question "2" which inquired if either officer "seized, searched and detained Herbert Spellman in violation of the Fourth Amendment"? If the answer was again "NO", the Foreperson was to sign and date the verdict sheet and call our Courtroom Deputy. If the jurors answered YES to either A or B for either officer, they were to proceed to question C, which asked them to determine for that officer "[w]hat amount is fair and reasonable to compensate Herbert Spellman for the damages that [the officer] caused?" The jurors were then asked to consider whether either officer "acted maliciously or wantonly in violating Mr. Spellman's federally-protected rights," and, if they found "YES", they could award punitive damages. Neither party objected to the final, post-conference version of the Jury Questionnaire.

The jury began deliberating on March 18, 2015 after two days of trial. At 10:48 a.m. the jury posed the following question, "Could you provide guidance on how to determine the amount for punitive damages?" We proposed, and both parties agreed, to draw the jury's attention to the portion of our Charge that discussed how to calculate punitive damages. Tr. 3/18/15 at 2:4-3:5. At 11:05 a.m. we received a second note asking "In determining punitive damages, are we considering only the personal resources of defendants or the resources of the Philadelphia Police Department?" Id. at 3:17-19. After discussing with the parties and receiving no objection, we told the jury to refer to the paragraph at the top of page fourteen of the Charge they had in their possession. Id. at 4:22-24.

Shortly thereafter the jury delivered the verdict sheet in which it found "NO" as to

questions A and B for both officers, but nevertheless found that both had acted "maliciously or wantonly" and awarded plaintiff $10,000 in punitive damages as to each officer notwithstanding this "NO" answer. Id. at 5:9-15, 6:20, 7:15-16.  We convened with counsel in Chambers at 12:30 p.m.  Plaintiff's counsel asked the Court to inform the jury that it had misunderstood the questionnaire and direct it to reconsider the Questionnaire. Id. at 7:19-22.  Plaintiff's counsel argued that the jury was confused and "obviously feel that Mr. Spellman is entitled to damages. . . . [T]hey, at a minimum, have to be told that you need to present a consistent verdict." Id. at 11:10-15.  Counsel for the defendants contended that the deliberations had concluded and the jury could not, therefore, be told to reconsider. Id. at 8:16-17, 9:5-7.  Defense counsel proposed making a motion that we "mold the verdict to strike the last two" answers as "inconsistent with the verdict sheet." Id. at 10:8-9.  We agreed. Id. at 12:3-5.  Plaintiff's counsel objected, stating the jury should be given clarification, and he asked that the jury be polled as to the questionnaire, which we agreed to do. Id. at 12:8-12, 19-20.

In open court we polled the jury as to Questions 1A and 1B (defendant Momme) and 2A and 2B (defendant O'Connor), but not the other questions which we had not read into the record, after which the jury was dismissed.

After the jury left the courtroom, plaintiff's counsel objected that as we had advised the parties in Chambers that the jury had awarded money damages as to both defendants, that "indicates a finding that the jury unanimously found that the defendant officers had violated Mr. Spellman's federally-guaranteed rights and awarded damages." Id. at 16:13-16.  He objected to the fact that that part of the verdict was not read aloud. Id. at 16:16-17.

We explained our decision in our brief March 18, 2015 Memorandum.  In light of the jury's "manifest confusion," we asked our Deputy Clerk to publish the verdict by reference to the

parties' names and reciting, "you found in favor of the police officers and against plaintiff, so say you all?" See Spellman v. Officer Brad Momme et al., C.A. No. 14-3365 (E.D.Pa. Mar. 18, 2015). On plaintiff's counsel's request, the Deputy Clerk

> polled the jury individually with the litany of 'do you agree with the verdict as the Court has recorded it?' and each of the seven deliberating jurors showed no hesitation in agreeing with that verdict. We therefore granted the defendants' motion to enter judgment in accordance with the results of the jury polling that we conducted in accordance with Fed. R. Civ. P. 48(c).[2]

Id. at pg. 2. We further explained, "It seemed to us that, notwithstanding the jury's confusion, the law obliged us to grant the defendants' motion to enter judgment, which we did this day." Id.

> We were fortified in our conclusion by the lack of ambiguity as regards the jury's decision not to compensate the plaintiff as to the consequences of what the officers did or did not do to the plaintiff. We therefore concluded that Judgment should be entered in accordance with the jury's unhesitating conclusion that neither officer "seized, searched and detained Herbert Spellman in violation of the Fourth Amendment causing harm to Mr. Spellman."

Id.

### B. Spellman's Motion For a New Trial

On March 27, 2015, Spellman timely filed a motion for a new trial. He contends that our failure to clarify the jury's "confusion" was error. Mem. of Law at 3. He maintains that he did not seek to impeach the verdict or explore juror misconduct but "simply requested clarification and further instructions by the Court as the only fair method of ensuring an accurate verdict,"

---

[2] Fed. R. Civ. P. 48(c) provide that
> After a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually. If the poll reveals a lack of unanimity or lack of assent by the number of jurors that the parties stipulated to, the court may direct the jury to deliberate further or may order a new trial.

5

which he contends finds substantial support in federal law. Id. at 4. Spellman also offers the Declaration of William Bailey, one of the jurors, to explain that clarification was necessary because the jurors unanimously agreed the officers had violated Spellman's Fourth Amendment rights by seizing, searching and detaining him and using unreasonable force against him but were confused by the phrase "causing harm to Mr. Spellman" in light of the plaintiff's preexisting injuries. Id., see also Ex. B. Bailey's Declaration "demonstrates that clarification was necessary to ensure that the Court had entered a correct and reliable verdict." Id. at 6. The jury should have been "further instructed or questioned in an effort to resolve doubts regarding the accuracy of the verdict in this case." Id. On this basis, he moves for a new trial.

Defendants deny the verdict was inconsistent and counter that we permissibly disregarded the jury's response to questions it should not have answered because the jury ignored our instructions. Resp. at unnumbered 2. They maintain that when a jury ignores a court's instructions and responds to questions it should not have answered, "the latter answers are to be disregarded as superfluous." Id. "Contrary to [p]laintiff's assertion, this court was under no obligation to clarify the Jury's verdict because the Jury's response to the damages interrogatory was not authorized under the verdict sheet's explicit instructions, and therefore, it did not create an inconsistency that required clarification." Id. at unnumbered 4. The defendants urge that we did not abuse our discretion by seeking "to resolve an alleged inconsistency by polling the jury and then molding the verdict to exclude the jury's response to a question it was not supposed to answer." Id. at unnumbered 5.

Defendants also argue that we may not consider Juror Bailey's affidavit in determining whether to grant a new trial because Fed. R. Evid. 606(b) bars the proffer of evidence of jurors' thoughts or intentions underlying the verdict and the affidavit is therefore inadmissible. Id.

6

Spellman replies that defendants' case citations support his contention that "when [the] jury's answers appear to conflict, we are oblig[ed] to reconcile the answers, if possible, in order to validate the jury's verdict." Reply at 4 (quoting White v. Grinfas, 809 F.2d 1157, 116[1] (5th Cir. 1987)). He also contends that the juror Declaration is offered not to impeach the verdict or explore juror misconduct, but rather to show that the verdict was not what the jurors actually agreed upon. Id. at 5.

> In the final analysis, the practice of seeking clarification from the jury to resolve apparent conflicts in the answers to jury interrogatories is precisely what Rule 49(b) of the Federal Rules of Civil Procedure prescribes under such circumstances as presented by this case.[3]

Id. at 6.

### C. Discussion

Spellman urges us to rely on precedential opinions where our Court of Appeals held that a district court properly propounds additional interrogatories when an apparently confused jury delivers an inconsistent verdict and argues that our failure to do so here necessitates a new trial.

The defendants, on the other hand, point to decisions from other Circuits holding a district court has broad discretion to refuse to consider a verdict that violates such court's

---

[3] Fed. R. Civ. P. 49(b)(3) provides that "[w]hen the answers are consistent with each other but one or more is inconsistent with the general verdict," the court may:
> (A) approve, for entry under Rule 58, an appropriate judgment according to the answers, notwithstanding the general verdict;
> (B) direct the jury to further consider its answers and verdict; or
> (C) order a new trial.

Rather to the point at hand, Fed. R. Civ. P. 49(b)(4) provides that
> When the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial.

7

instructions and aver that we properly exercised our discretion to disregard responses to questions the jury had been directed not to answer.

Our Court of Appeals permits a district court to mold a verdict under certain narrow circumstances. Such circumstances arise, for example, when a jury finds a plaintiff partly at fault for the injury giving rise to the suit, but nonetheless improperly awards him full damages. Then, our Court of Appeals has held, the district court may properly reduce the award in proportion with the jury's negligence finding. See, e.g., Sprinkle v. AMZ Mfg. Corp., 567 F. App'x 163, 165 (3d Cir. 2014). "The test is whether the verdict clearly manifests the intention and finding of the jury upon the issue submitted to them." Smyth Sales, Inc. v. Petroleum Heat & Power Co., Inc., 141 F.2d 41, 44 (3d Cir. 1944) (quoted in Sprinkle, 567 F. App'x at 165). A district court may also mold a verdict "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent[. Then], they must be resolved that way." Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962). Our Court of Appeals interprets the Gulf Stevedores holding to mean that a verdict must be molded consistently with a jury's answers when there is any way to view the responses that reconciles the jury's answers. McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 763 (3d Cir. 1990).[4] For example, in McAdam our Court of Appeals found permissible a district court's judgment combining jury awards for damages caused by two brokerage firms found jointly and severally liable for different categories of losses. "[T]he district court's molding of the jury's answers is a

---

[4] See also Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp., 626 F.2d 280, 293 (3d Cir. 1980) (internal citations omitted) ("[i]f there exists 'a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.' Since there is at least one way to explain the jury's answers to the interrogatories, we are bound to affirm them."); Franklin Music Co. v. American Broadcasting Co. Inc., 616 F.2d 528, 535 (3d Cir. 1979) ("[t]he role of this court in reviewing seemingly inconsistent answers to special interrogatories is to search for a reading of the jury's responses that makes them consistent.").

minimally plausible view of the case" that reconciled the jury's verdict, our Court of Appeals held.  896 F.2d at 764.

The defendants urge us to rely on Kavanaugh v. Greenlee Tool Co., 944 F.2d 7, 9 (1st Cir. 1991), where the jury found a machine-tool manufacturer not negligent but nonetheless awarded damages to the plaintiff.  There, the First Circuit approved the district court's decision to disregard as surplusage the damage award because the jury had clearly ignored the court's instructions (and the complaining party interposed no objection to the inconsistent responses until after the jury had been discharged).  Id. at 10.  They also point us to Grinfas, where the jury ignored an instruction not to answer further questions if it found the sellers were unaware of structural defects prior to executing a settlement and release.  The Fifth Circuit held that the jury's subsequent inconsistent answers finding fraudulent inducement were "irrelevant."  809 F.2d at 1161.  "To effectuate best the intent of the jury, we hold that if the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other question."  Id.[5]

These decisions, while informative, are not from this Circuit.  Unlike Kavanaugh or inconsistent damage awards in our sister courts, we could not conclude here that "the verdict clearly manifests the intention and finding of the jury upon the issue submitted to them."  See Smyth Sales, 141 F.2d at 44.  And, unlike the Grinfas jury, far from being clear, the jury's answers here were, as we said in our short March 18 Memorandum, the product of "manifest confusion".  We would have been unable to mold a verdict consistent with a view of the case that

---

[5] The defendants are not helped by their citation to Richard v. Firestone Tire & Rubber Co., 853 F.2d 1258 (5th Cir. 1988), where the district court, faced with initially inconsistent answers, "directed the jury to consider further its answers," id. at 1260.  The Fifth Circuit found no error and affirmed.

9

would have reconciled the jury's answers, as our Court of Appeals in McAdam directed.

Though by no means free from doubt, the cases on which plaintiff relies offer controlling guidance in this difficult matter. In Riley v. K Mart Corp, 864 F.2d 1049 (3d Cir. 1989), the jury, applying Pennsylvania law, found the plaintiff contributorily negligent but nonetheless awarded him damages. The district court sent a note to the jury seeking to clarify the inconsistency and entered judgment for the plaintiff based on the second set of responses. Id. at 1052. The defendant appealed contending the district court's request for clarification conflicted with the Seventh Amendment's imperative that "no fact tried by a jury shall be otherwise re-examined in any court." Id. (quoting Atlantic & Gulf Stevedores, 369 U.S. at 359). Our Court of Appeals disagreed holding that its precedents "smile on a district judge's use of additional questions to obtain clarification from a still-empaneled jury of the meaning of its answers and verdict." Id. at 1053 (internal citation and quotation marks omitted).

Similarly, in McLaughlin v. Fellows Gear Shaper Co., 786 F.2d 592 (3d Cir. 1986) -- another tort case where the jury's verdict was inconsistent as to liability and damages -- our Court of Appeals held that when "the answers are inconsistent on their face and cannot be read to be consistent," the district court did not violate the Seventh Amendment by asking the jury to reconsider its decision.[6] Id. at 596.

We have come to the conclusion that, because of the jury's confusion, our failure to

---

[6] As our Court of Appeals wrote approvingly, "the decision to seek clarification from the jury in order to resolve the apparent conflict in the answers to the five original interrogatories is precisely what Rule 49(b) of the Federal Rules of Civil Procedure prescribes in such a situation, and the district court cannot be faulted for having followed it." McLaughlin v. Fellows Gear Shaper Co., 786 F.2d 592, 596 (3d Cir. 1986). See also Stanton v. Astra Pharmaceutical Products, Inc., 718 F.2d 553, 575-76 (3d Cir. 1983) ("[I]n purely pragmatic terms, it seems terribly inefficient not to obtain clarification from a still-empaneled jury of the meaning of its answers and verdict, especially when we consider that unclarified inconsistent answers often necessitate a retrial of the entire case.")

probe the jury's inconsistent answers led to an inaccurate verdict.  This result is buttressed by Juror Bailey's Declaration.  Bailey states that at the end of the jury's deliberation all seven jurors unanimously agreed that both defendants had seized, searched and detained the plaintiff and used unreasonable force against him in violation of the Fourth Amendment, but believed that they could only answer "YES" to questions A and B if the officers caused the plaintiff physical harm.  See Mot. Ex. B.  "[T]he jury did not believe that any physical harm suffered by Mr. Spellman was directly caused by the officers due to Mr. Spellman's pre-existing injuries." Id. at ¶ 2(c).  The jury awarded punitive damages because they unanimously found the defendant officers had acted maliciously or wantonly in violating the plaintiff's constitutional rights.  Id. at ¶ 2(d).

> The jury was confused and upset when the verdict was read in the courtroom and did not include our unanimous finding that Mr. Spellman's federally-protected rights were violated and that he was entitled to a total of $20,000.00 in punitive damages.

Id. at ¶ 3.

   The defendants urge that we disregard this Declaration as an inquiry into jury deliberations prohibited by Fed. R. Evid. 606.[7]  We do not agree that Rule 606 bars our consideration of Juror Bailey's Declaration.  Defendants misread the Advisory Committee Notes

---

[7] Federal Rule of Evidence 606(b)(1) provides that
> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

The prohibition makes exceptions under 606(b)(2) for testimony about
> (A) extraneous prejudicial information was improperly brought to the jury's attention;
> (B) an outside influence was improperly brought to bear on any juror; or
> (C) a mistake was made in entering the verdict on the verdict form.

11

to the 2006 Amendments, on which they rely, to argue that the Declaration is impermissible evidence of the jury's intent. "[F]ederal law distinguishes between inquiring into the jury's deliberative process, which Rule 606(b) forbids, and merely seeking to determine whether the verdict actually agreed to by the jury is the same as the verdict reported to the court, which the case law permits." TeeVee Toons, Inc. v. MP.3Com, Inc., 148 F. Supp. 2d 276, 278 (S.D.N.Y. 2001) (cited with approval in Advisory Committee Notes to 2006 Amendments). More to the point here, Rule 606(b) is "silent regarding inquiries designed to confirm the accuracy of a verdict." Advisory Committee Notes to 2006 Amendments (citing TeeVee Toons, Inc., 148 F. Supp. 2d. at 278).

Indeed, the Advisory Committee Notes encourage precisely the kind of inquiry that would have been helpful here.

> [T]he reasons for the rule barring juror testimony, namely, the dangers of uncertainty and of tampering with the jurors to procure testimony, disappear in large part if such investigation as may be desired is made by the judge and takes place before the jurors' discharge and separation. Errors that come to light after polling the jury may be corrected on the spot, or the jury may be sent out to continue deliberations, or, if necessary, a new trial may be ordered.

Id. (emphasis in original and internal quotations and citations omitted).

Nor does United States v. Morris, 570 F. App'x 151, 154 (3d Cir. 2014), fortify defendant's proposition that Fed. R. Evid. 606(b) bars a juror's statement where the verdict error was "was a mistake in the jury's understanding of the Court's instructions and how the special interrogatory should be answered." In fact, in Morris our Court of Appeals was at pains to distinguish such juror statements from those that permissibly "suggest that the verdict. . . inaccurately reflected the will of the jury." Id. at 153.

Accordingly, upon further consideration of our handling following the jury's inconsistent

verdict and the plaintiff's motion for a new trial, we will grant plaintiff's motion and set a new trial date.

BY THE COURT:

_/s/ Stewart Dalzell, J._
Stewart Dalzell, J.